IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ARTHUR J. GOSHAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:06CV492-SRW |
| ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION AND ORDER**

Plaintiff Arthur J. Goshay brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that this case is due to be remanded to the Commissioner for consideration of new evidence.

**BACKGROUND**

On September 6, 2002, plaintiff filed an application for disability insurance benefits. On May 18, 2005, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a decision on September 21, 2005. The ALJ concluded that plaintiff suffered from the severe impairments of diabetes, hypertension, osteoarthritis and pancreatitis. He found that plaintiff's impairments,

considered in combination, did not meet or equal the severity of any of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to perform jobs existing in significant numbers in the national economy. Thus, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act. On April 6, 2006, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

Plaintiff argues, *inter alia*, that the Appeals Council erred by failing to remand this case to the ALJ for consideration of new evidence.[1] Thus, the court must review the record as it was before the Appeals Council, which included the newly submitted records. See Fry v. Massanari, 209 F.Supp.2d 1246, 1252 (N.D. Ala. 2001) (citing, *inter alia*, Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir.1998) (Where the claimant specifically challenges the decision of the Appeals Council to deny review, the record for the district court's consideration will include any new evidence submitted by the claimant after the ALJ's hearing and decision.). To demonstrate that remand is appropriate, plaintiff must show that: "'(1) there is new, noncumulative evidence; (2) the evidence is "material," that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level.'" Vega v. Commissioner of Social Security, 265 F.3d 1214, 1218 (11th Cir. 2001).

Plaintiff filed the present application for disability benefits on September 6, 2002. He alleges disability based, in part, on arthritis in both knees which "causes swelling and makes

---

[1] The court has considered plaintiff's argument that he is entitled to reversal based on asserted error in the ALJ's RFC assessment. The court, like plaintiff, would prefer the ALJ's RFC assessment to include more detailed findings on plaintiff's functional capacities. However, the Eleventh Circuit has recently rejected plaintiff's argument that an RFC assessment for "light work" is legally insufficient. Freeman v. Barnhart, 2007 WL 861140, * 2 (11th Cir. Mar. 23, 2007)(unpublished opinion). Additionally, as the Commissioner notes, the record does not include a medical diagnosis of "obesity" nor does it include evidence of the effect of plaintiff's weight on his functional capacity. The ALJ's failure to discuss plaintiff's weight specifically does not demonstrate that he failed to consider it in rendering his decision. See Hennes v. Commissioner of Social Security Administration, 130 Fed. Appx. 343 at 348 n. 11 (11th Cir. May 3, 2005)(unpublished opinion)("Although the ALJ did not specifically address how Hennes's obesity affected her subjective complaints of pain and, ultimately, her RFC, we recently have reiterated that 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole."'")(quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)).

walking difficult." (R. 25).  Plaintiff testified at the administrative hearing on May 18, 2005 that he cannot stand or sit for long because of pain in his hip joints and severe pain in his knees. (R. 247).  He further testified that sometimes, because of pain in his hip joints, he cannot remain in a seated position for more than about 45 minutes, and he then has to stand and walk around.  (R. 250-51).

The ALJ rendered his decision on September 21, 2005.  He determined that plaintiff had the following residual functional capacity:

> light work and avoid climbing ropes, ladders, scaffolds and only occasional stooping and crawling, moderate limited ability to maintain regular work schedule and attendance; moderately limited ability to maintain attention and concentration.

(R. 16).  He found that plaintiff's testimony regarding his symptoms was not fully credible because the plaintiff "has 4/5 motor strength" and because "[a] medical consultant reported that the claimant can perform light work."  (R. 14).[2]  The medical examination showing plaintiff to have "4/5 motor strength" was a consultative examination performed by Dr. Griffin Walters on January 16, 2003, two years and eight months before the ALJ's decision.  (R. 179-86).  In his clinical examination, Dr. Walters noted "[m]oderate osteoarthritis changes right knee, moderate to severe changes left knee, bilateral crepitance knees."  He concluded that plaintiff has "[o]steoarthritis multiple areas per history," but did not perform X-rays. (R. 182, 185).  In rendering his opinion that plaintiff is able to perform light work, the medical consultant whom the ALJ cited in making his credibility determination relied on

---

[2] In his credibility assessment, the ALJ also stated that "claimant is non-complaint when it comes to his blood sugar but his diabetes is medically controlled."  This reason for discounting plaintiff's credibility does not pertain to plaintiff's testimony regarding knee and hip pain.

4

physical examinations and laboratory tests occurring in 2002, Dr. Walter's examination in January 2003, and a lab test and left knee x-ray ordered by the Commissioner and performed on February 13, 2003. (R. 191). The record before the ALJ included no x-ray of plaintiff's hips or right knee and only the February 2003 x-ray of plaintiff's left knee. The radiologist's report of that x-ray stated:

> No fracture or dislocation identified. There is narrowing of the joint space laterally. There is bony sclerosis of the lateral femoral condyle and tibial plateau. There is eburnation of the femoral condyle and tibila plateaus. Dorsopatellar osteophytes are noted. A small fabella is also noted.
>
> **IMPRESSION:** Osteoarthritic changes of all compartments, most prominent in the lateral compartment. No acute bony injury, however, identified.

(R. 188).

The evidence presented by plaintiff to the Appeals Council included x-rays performed on November 7, 2005 – less than seven weeks after the ALJ's decision – of plaintiff's left and right knees and his left and right hips. (R. 228-31). With regard to plaintiff's left knee, the radiologist's report states:

> FINDINGS: Frontal and lateral views of the left knee demonstrate near total loss of the joint space in the lateral compartment. Osteotphytes [sic] are seen off the medial and lateral tibial plateau as well as the medial and lateral femoral condyles. There is narrowing of the patellofemoral joint space with superior and inferior enthesophytes seen. There appears to be a contour irregularity associated with the articular surface of the lateral femoral condyle. This appears significantly flattened on the lateral view.
>
> CONCLUSION: Severe degenerative changes associated with the knee as above.

(R. 228). With regard to plaintiff's left knee, the report states:

> FINDINGS: Frontal and lateral views of the right knee demonstrate significant

5

> narrowing in the lateral compartment with osteophyte formation seen. There is mild narrowing in the patellofemoral joint as well as the medial compartment. Subchondral cyst formation was also identified. What might represent an osteochondral defect is seen associated with the lateral femoral condyle.
>
> CONCLUSION: Severe degenerative changes associated with the lateral compartment of the knee as well as mild degenerative changes seen in hte medial compartment as well as the patellofemoral joint. In addition, a probable osteochondral defect is seen associated with the lateral femoral condyle.

(R. 229). Plaintiff's left hip x-ray revealed degenerative change; the x-ray of his right hip showed degenerative changes associated with the hip joint and the right sacroiliac joint. (R. 230-31).

These x-ray reports are new and non-cumulative. The x-rays were not performed until after the ALJ rendered his decision. As noted above, the record before the ALJ included no x-rays of plaintiff's right knee or hips. While it did include a left knee x-ray, that x-ray was performed two years and eight months before the ALJ's decision. While the x-ray showed osteoarthritic changes of the left knee, it did not reveal the severe changes shown in the new left knee x-ray. Additionally, the court concludes that the new x-rays are material, as there is a reasonable possibility that they would change the administrative result. The new x-rays provide objective support – previously unavailable to the ALJ – for plaintiff's complaints of hip and knee pain. The ALJ discredited plaintiff's testimony of disabling symptoms based on an examination and x-ray conducted nearly three years before his decision. There is a reasonable possibility that consideration of the new x-rays would cause the ALJ to credit

plaintiff's testimony of disabling functional limitations caused by hip and knee pain.[3,4]

The court further concludes that, since the x-rays were not conducted until several weeks after the ALJ's decision, plaintiff has demonstrated good cause for his failure to present the x-ray reports to the ALJ. This objective evidence did not exist prior to the ALJ's decision. See Archer v. Commissioner, 2006 WL 988483, * 2 n. 3 (11th Cir. Apr. 14, 2006)(stating that "[t]he good cause requirement is satisfied when the evidence did not exist at the time of the administrative proceedings" and describing the District Court's conclusion that "the mere non-existence of the evidence did not amount to good cause" as "contrary to this circuit's standard"); see also Vega v. Commissioner of Social Security, 265 F.3d 1214, 1218-19 (11th Cir. 2001).[5]

## CONCLUSION

For the foregoing reasons, it is

ORDERED that this action is REMANDED to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of new evidence.

---

[3] The court here concludes only that there is a "reasonable possibility" of a change in the administrative result, not that such a change is dictated by the new evidence.

[4] The court rejects the Commissioner's argument that the evidence does not relate to the relevant time period. In the absence of evidence of a traumatic injury between the date of the ALJ's decision and the x-rays, x-ray evidence of degenerative joint disease obtained 47 days after the decision sheds light on plaintiff's condition within the relevant period.

[5] This case is distinguishable from those in which a claimant belatedly obtains and submits a physician's RFC assessment which is based on examinations or objective testing conducted before the ALJ's decision was issued.

Done, this 7th day of June, 2007.

                                        <u>/s/ Susan Russ Walker</u>
                                        SUSAN RUSS WALKER
                                        UNITED STATES MAGISTRATE JUDGE